UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAULO ECHEVERRY,

    Plaintiff,

v.                                CASE NO.: _____

BUENA VISTA TRADING COMPANY d/b/a
BUENA VISTA CONSTRUCTION COMPANY,
and INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 385,

    Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, PAULO ECHEVERRY ("Plaintiff"), by and through his undersigned counsel, hereby sues Defendants, BUENA VISTA TRADING COMPANY d/b/a BUENA VISTA CONSTRUCTION COMPANY. ("BVC"), and INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 385 ("UNION") (collectively, "Defendants"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages that exceed $15,000.00, exclusive of attorney's fees, costs and interest.

2. This is an action by Plaintiff against his former employer for national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA").

3. Venue is proper in this Court because Defendants, at all material times, were doing business in Orange County, Florida, and the events underlying this Complaint took place in Orange County, Florida.

**PARTIES**

4. Plaintiff is a resident of Orange County, Florida.

1

5. BVC is a Florida corporation, licensed and authorized to conduct business in the State of Florida. At all material times, BVC maintained an office in Lake Buena Vista, Orange County, Florida.

6. UNION is a labor organization that represents BVC's employees. At all material times, the UNION maintained an office in Orlando, Orange County, Florida.

7. Defendants are employers as defined by the laws under which this action is brought and employ the required number of employees.

8. Defendants are joint employers and/or under a common enterprise with regard to Plaintiff's employment.

## GENERAL ALLGATIONS

9. At all material times, Defendants acted with malice and with reckless disregard for Plaintiff's federally protected rights.

10. At all material times, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

11. Plaintiff has exhausted all administrative and related prerequisites prior to filing this suit.

12. Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

## FACTS

13. Plaintiff is a white Hispanic Male of Colombian origin. His native language is Spanish.

14. Plaintiff speaks English with a heavy accent.

15. Plaintiff has been a member of the Union since 2004.

16. On September 16, 2012, Plaintiff was hired by BVC as a driver.

17. During his employment, Plaintiff was harassed by the Dayshift Foreman, Robert Peakman (Caucasian, non-Hispanic), who bullied him and made fun of his accent. On several occasions, Mr. Peakman referred to Plaintiff as a "Fucking Mexican," and he referred to other Hispanic employees as "Donkey." Mr. Peakman also acted as though Plaintiff could not understand him when he called on

radio, intentionally trying to make Plaintiff look bad in front of his co-workers. On one Thanksgiving, Plaintiff organized a lunch and brought in Latin food for his co-workers, and Mr. Peakman stated that he was not going to "eat that shit of Hispanic food."

18. In November 2012, Plaintiff complained to the General Foreman, Jimmy Williams (Caucasian, non-Hispanic) about Mr. Peakman's harassment. After Plaintiff made his complaint, the harassment stopped briefly, but it began again in January 2013 and it continued until the termination of Plaintiff's employment in June 2013.

19. On multiple occasions, Plaintiff spoke with Union officials about his wish to become the daytime steward because Edward Stamps (Caucasian, non-Hispanic) was the only steward and he worked the night shift. However, the Union refused to appoint Plaintiff to a steward position because of his national origin, and it also refused to appoint other Hispanic employees to positions of authority. Similarly, BVC failed to appoint Hispanic employees to supervisory positions (Superintendent, Foreman, etc.) or to positions in Administration or Operations.

20. On multiple occasions, jobs that required overtime (weekends, late hours on weekdays, etc.) were taken away from Plaintiff and given to non-Hispanic employees, including Steve Tattoli. In addition, Plaintiff was denied the opportunity to work on the night shift as a result of his national origin.

21. In late 2012 or early 2013, Plaintiff experienced a recurring problem with his paychecks because the amount was often wrong and sometimes he had to wait two weeks to get paid, while other drivers were paid weekly. Plaintiff complained about the problem to the Union Steward, but the Steward refused to help Plaintiff because of his national origin. When Plaintiff complained about this treatment to the General Foreman and the Union Representative, John Coskey (Caucasian, non-Hispanic), they also refused to help.

22. On June 26, 2013, Plaintiff was informed by the General Foreman that BVC had asked him to lay off four drivers and that Plaintiff had been selected for the layoff because the other drivers had been employed longer than he, indicating that the layoff was based on seniority. Plaintiff was also told that he would be the first person rehired after the workload increased. However, Plaintiff

subsequently learned that BVC layoffs were typically based on the fact that an employee's job assignment had ended, not on seniority. In addition, Plaintiff knew that he had more seniority than other non-Hispanic employees who were not selected for the layoff. Therefore, Plaintiff believed that he was selected for the layoff based upon his national origin.

23. On June 26, 2013, Plaintiff complained about the layoff and about Mr. Peakman's harassment to the Union Steward and the Union Representative, but they refused to take any action.

24. On July 2, 2013, Plaintiff met with the Union President, Mike Stapleton (Caucasian, non-Hispanic), and complained about the harassment and discrimination and about the Union Steward's refusal to assist him with these issues. In response, Mr. Stapleton stated that it sounded like a personal problem between Plaintiff and Mr. Stamps.

25. Plaintiff also asked Mr. Stapleton if the Union would assist him if he filed a grievance regarding the layoff. In response, Mr. Stapleton stated that BVC might retaliate against Plaintiff and not call him back if he filed a grievance. Because Mr. Stapleton failed to take any action on his behalf, on July 8, 2013, Plaintiff filed a formal grievance with the Union.

26. In retaliation for making these complaints, Plaintiff was not rehired as a driver by BVC. In contrast, Diego Gomez, another employee who was laid off at the same time but who did not file a grievance, was hired back on July 18, 2013. Although BVC claimed that it had changed its policy, and had decided to only rehire CDL-Class A drivers, Mr. Gomez, like Plaintiff, only had a CDL-Class B license. In addition, Plaintiff subsequently learned that other non-Hispanic employees who were laid off after Plaintiff were rehired by BVC.

27. The Union refused to refer work to Plaintiff after his layoff as a result of his national origin and in retaliation for the complaints he filed. In contrast, a non-Hispanic employee named Steve Tatolly, who was suspended and laid off for attempting to hurt another employee, was called back to work by BVC. Similarly, a non-Hispanic employee named Steven Joseph was suspended twice and laid off in 2013 due to racial slurs; however, he also was called back by BVC. Although Plaintiff never had a verbal or written reprimand while he was employed by BVC, he was not called back to work.

28. On September 9, 2013, Plaintiff filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging claims for discrimination and coercion.

29. Shortly thereafter, Plaintiff was approached by a Union Representative, Roger Allain, who stated in an intimidating and threatening manner that Plaintiff did not have any right to talk about his case with other employees and that he would face consequences if he did.

30. In December 2013, Plaintiff dual-filed filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), alleging claims for national origin discrimination and retaliation.

31. Shortly thereafter, the Union sent out a notice to all members, notifying them that Plaintiff had filed a complaint with the NLRB and that it had settled the complaint in order "to avoid unnecessary and wasteful legal expense to our members." This notice constitutes additional retaliation against Plaintiff for his complaints of discrimination and further caused him not to be called back to work and to be ostracized by his co-workers.

### COUNT I: TITLE VII
### (National Origin Discrimination)

32. Plaintiff re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 31 above, as though fully set forth herein.

33. Plaintiff is a Hispanic male, which places him within a protected category under Title VII.

34. Plaintiff was discriminated against and subjected to adverse employment actions based on his national origin when he was, inter alia, treated less favorably in the terms and conditions of his employment than similarly situated non-Hispanic employees and ultimately terminated.

35. As a direct and proximate cause of Defendants' actions, Plaintiff has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

36. The actions of the Defendants make reinstatement ineffective as a make-whole remedy, entitling Plaintiff to front pay in lieu of reinstatement.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following:

    A. Compensatory damages for lost wages, benefits, and any other applicable remuneration;

    B. Other compensatory damages as permitted by law;

    C. Front pay in lieu of reinstatement

    D. Prejudgment interest;

    E. Reasonable attorney's fees and costs of this action; and

    F. Such other and further relief as the Court deems just and proper.

## COUNT II: TITLE VII
### (Retaliation)

37. Plaintiff re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 31 above, as though fully set forth herein.

38. Plaintiff complained to Defendants on numerous occasions that he was being subjected to national origin discrimination.

39. Plaintiff also filed complaints of discrimination with the NLRB, EEOC, and FCHR.

40. Defendants retaliated against Plaintiff for engaging in this protected activity.

41. The retaliatory and adverse actions suffered by Plaintiff occurred within close temporal proximity to his opposition to Defendants' unlawful discriminatory practices.

42. The adverse employment actions suffered by Plaintiff were causally related to, and in retaliation for, Plaintiff having engaged in the protected activity of complaining about, and objecting in good faith to, unlawful discriminatory practices by Defendant as prohibited by Title VII.

43. As a direct and proximate cause of Defendants' actions, Plaintiff has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable

damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

44. The actions of the Defendants make reinstatement ineffective as a make-whole remedy, entitling Plaintiff to front pay in lieu of reinstatement.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the following:

A. Compensatory damages for lost wages, benefits, and any other applicable remuneration;

B. Other compensatory damages as permitted by law;

C. Front pay in lieu of reinstatement

D. Prejudgment interest;

E. Reasonable attorney's fees and costs of this action; and

F. Such other and further relief as the Court deems just and proper.

## COUNT III: FCRA
### (National Origin Discrimination)

45. Plaintiff re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 31 above, as though fully set forth herein.

46. Plaintiff is a Hispanic male, which places him within a protected category under FCRA.

47. Plaintiff was discriminated against and subjected to adverse employment actions based on his national origin when he was, inter alia, treated less favorably in the terms and conditions of his employment than similarly situated non-Hispanic employees and ultimately terminated.

48. As a direct and proximate cause of Defendants' actions, Plaintiff has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

49. The actions of the Defendants make reinstatement ineffective as a make-whole remedy, entitling Plaintiff to front pay in lieu of reinstatement.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following:

A. Compensatory damages for lost wages, benefits, and any other applicable remuneration;

B. Other compensatory damages as permitted by law;

C. Front pay in lieu of reinstatement

D. Prejudgment interest;

E. Reasonable attorney's fees and costs of this action; and

F. Such other and further relief as the Court deems just and proper.

## COUNT IV: FCRA
### (Retaliation)

50. Plaintiff re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 31 above, as though fully set forth herein.

51. Plaintiff complained to Defendants on numerous occasions that he was being subjected to national origin discrimination.

52. Plaintiff also filed complaints of discrimination with the NLRB, EEOC, and FCHR.

53. Defendants retaliated against Plaintiff for engaging in this protected activity.

54. The retaliatory and adverse actions suffered by Plaintiff occurred within close temporal proximity to his opposition to Defendants' unlawful discriminatory practices.

55. The adverse employment actions suffered by Plaintiff were causally related to, and in retaliation for, Plaintiff having engaged in the protected activity of complaining about, and objecting in good faith to, unlawful discriminatory practices by Defendant as prohibited by the FCRA.

56. As a direct and proximate cause of Defendants' actions, Plaintiff has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

57.     The actions of the Defendants make reinstatement ineffective as a make-whole remedy, entitling Plaintiff to front pay in lieu of reinstatement.

**WHEREFORE**, Plaintiff demands judgment against Defendant for the following:

A. Compensatory damages for lost wages, benefits, and any other applicable remuneration;

B. Other compensatory damages as permitted by law;

C. Front pay in lieu of reinstatement

D. Prejudgment interest;

E. Reasonable attorney's fees and costs of this action; and

F. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted this the 11th day of December, 2014.

BURRUEZO & BURRUEZO, PLLC
941 Lake Baldwin Lane, Suite 102
Orlando, Florida 32814
Office: 407.754.2904
Facsimile: 407.754.2905

By:   /S/ Bertha L. Burruezo, Esq.
BERTHA L. BURRUEZO, ESQ.
Florida Bar Number 596973
bertha@burruezolaw.com

/S/ Carlos J. Burruezo, Esq.
CARLOS J. BURRUEZO, ESQ.
Florida Bar Number 843458
carlos@burruezolaw.com

/S/ LaKesia R. Mosley, Esq.
LAKESIA R. MOSLEY
Florida Bar Number 644021
lakesia@burruezolaw.com

Attorneys for Plaintiff, PAULO ECHEVERRY

4812-9282-2816, v. 2